Floyd W. Bybee, #012651
**BYBEE LAW CENTER, PLC**
90 S. Kyrene Rd., Ste. 5
Chandler, AZ 85226-4687
Office: (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| John M. Osborn; | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Grant & Weber Arizona, Inc.; | |
| Defendant. | (Jury Trial Demanded) |

## I.  Preliminary Statement

1.   Plaintiff brings this action for damages based upon Defendant's violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. Plaintiff seeks to recover statutory damages, actual damages, costs and attorney's fees.

## II.  JURISDICTION

2.   Jurisdiction of this Court, over this action and the parties herein, arises under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331.  Venue lies

1    in the Phoenix Division of the District of Arizona as Plaintiff's claims

2    arose from acts of the Defendant perpetrated therein.

### III. PARTIES

4    3.    Plaintiff is a resident of Maricopa County, Arizona.

5    4.    Plaintiff is a natural person who was obligated to pay a debt which was

6          incurred for personal, family, or household purposes.

7    5.    Plaintiff is a "consumer" as that term is defined by FDCPA § 1692a(3).

8    6.    Defendant Grant & Weber Arizona, Inc. is an Arizona corporation.

9    7.    Grant & Weber is licensed and bonded as a collection agency by the

10         Arizona Department of Financial Affairs, license number 0903319.

11   8.    Grant & Weber collects or attempts to collect debts owed or asserted to

12         be owed or due another.

13   9.    Grant & Weber is a "debt collector" as that term is defined by FDCPA §

14         1692a(6).

### IV. Factual Allegations

16   10.   Due to illness, Plaintiff incurred some medical bills owed to Mercy

17         Gilbert Medical Center which were not covered by insurance.

18   11.   In or about 2013, and after default, Mercy Gilbert assigned the debt to

19         Grant & Weber to collect.

20   12.   After some initial correspondence between the parties, on or about April

21         23, 2013, Grant & Weber sent Plaintiff another letter concerning the

22         collection of the Mercy Gilbert debt. (Copy of letter attached hereto as

23         Exhibit A.)

24   13.   In Exhibit A, Grant & Weber threaten that:

25              Since you have chosen to ignore our requests for

1
2
3
4
5

payment of this obligation, we are considering forwarding this account to our attorney, William Holder, Esq., for whatever efforts he deems appropriate.

Should you wish to avoid intervention by our attorney, we will look forward to discussing this matter with your on or before April 30, 2013.

6   14.   Grant & Weber sent Exhibit A to Plaintiff intending to threaten him and
7         lead him to believe that legal action was imminent unless the account was
8         paid.

9   15.   Upon information and belief, at the time it sent Exhibit A, Grant & Weber
10        had not referred the Gilbert Mercy debt to attorney William Holder.

11  16.   Upon information and belief, at the time it sent Exhibit A, Grant & Weber
12        did not have permission from attorney William Holder to use his name in
13        its correspondence to Plaintiff in the form of Exhibit A.

14  17.   Upon information and belief, at the time Grant & Weber sent Exhibit A
15        to Plaintiff, attorney William Holder did not know that his name was
16        being utilized by Grant & Weber in its letters in the form of Exhibit A.

17  18.   Upon information and belief, at the time it sent Exhibit A, Grant & Weber
18        did not have permission from Gilbert Mercy to threaten to take legal
19        action against Plaintiff.

20  19.   Upon information and belief, at the time it sent Exhibit A, Grant & Weber
21        did not have permission from Gilbert Mercy to take legal action against
22        Plaintiff.

23  20.   Grant & Weber sent Exhibit A to Plaintiff intending to imply that legal
24        action against Plaintiff was imminent.

25  21.   Grant & Weber sent Exhibit A to Plaintiff intending to threaten legal

1   action against Plaintiff.

2   22.   On or about April 23, 2013, Grant & Weber sent Plaintiff another

3         collection letter concerning the Gilbert Mercy debt. (Copy of letter

4         attached hereto as Exhibit B.)

5   23.   Grant & Weber attached an "Agreement" to this letter. (Copy of

6         Agreement attached hereto as Exhibit C.)

7   24.   In the Agreement, Grant & Weber once again threaten "The consideration

8         of this Agreement is forbearance of legal action of the assigned claim of

9         MERCY GILBERT MEDICAL CENTER,/REF #: F0444349."

10  25.   Upon information and belief, at the time it sent the Agreement, Grant &

11        Weber did not have permission from Gilbert Mercy to threaten to take

12        legal action against Plaintiff.

13  26.   Upon information and belief, at the time it sent the Agreement, Grant &

14        Weber did not have permission from Gilbert Mercy to take legal action

15        against Plaintiff.

16  27.   Grant & Weber included the quoted language in the Agreement sent to

17        Plaintiff intending to imply that legal action against Plaintiff was

18        imminent if the Agreement was not signed.

19  28.   Grant & Weber included the quoted language in the Agreement sent to

20        Plaintiff intending to threaten legal action against Plaintiff.

21  29.   The Agreement provided that Plaintiff would pay twenty-nine (29)

22        monthly payments of $170.00 each commencing on May 30, 2013, with

23        a final payment of $745.44 due on October 30, 2015..

24  30.   Plaintiff signed and faxed back the Agreement to Grant & Weber on May

25        30, 2013.

- 4 -

1    31.    On May 30, 2013, Plaintiff also went to Grant & Weber's website and

2            made the first payment of $170.00.

3    32.    When making the May 30, 2013 payment, Plaintiff provided his debit card

4            information tied to his checking account to Grant & Weber.

5    33.    On June 3, 2013, a debit in the amount of $173.95 was entered in

6            Plaintiff's checking account in favor of Grant & Weber.

7    34.    On June 30, 2013, which was a Sunday, Plaintiff went on line to make his

8            agreed upon payment of $170.00 to Grant & Weber, and learned that his

9            checking account had been overdrawn by a debit taken by Grant & Weber

10           in the amount of $4,877.95.

11    35.    At that time, Plaintiff recalled receiving an email from Grant & Weber

12           earlier, but had not opened it thinking it was simply a reminder to make

13           his June 30, 2013 payment.

14    36.    When he opened the Grant & Weber email, it stated:

15                 This is to notify you that your recurring payment in
the amount of $4,877.95 will be processed on June 30,

16                 2013. This payment will use your previous payment
method of your Visa Credit Card. The link below will

17                 take you to a summary of your agreed upon payment
plan.

18

19    37.    Contrary to Grant & Weber's statement in the email, Plaintiff had not set

20           up a recurring payment of $4,877,95 to be processed on June 30, 2013.

21    38.    Plaintiff called Grant & Weber first thing Monday morning and spoke to

22           collector L. Vasquez to inquire as to why Grant & Weber had debited

23           $4,877.95 from his checking account without his knowledge or

24           permission.

25    39.    Vasquez told Plaintiff that Grant & Weber did not make the debit, but that

1    it was Plaintiff's fault as he must have entered the authorization for that

2    amount at the time he made his May 30, 2013 payment.

3    40.   Vasquez knew that the Agreement entered into between Plaintiff and

4    Grant & Weber provided for payments of $170.00 per month.

5    41.   Yet, Vasquez told Plaintiff that Grant & Weber would not reverse the

6    debit, nor would it refund any portion of the $4,877.95.

7    42.   As a result and proximate cause of Defendant's actions, Plaintiff has

8    suffered actual damages, including, but not limited to, bank charges, loss

9    of money to pay bills, anxiety, embarrassment, and other emotional

10    distress.

## V.  Causes of Action

### a. Fair Debt Collection Practices Act

13    43.   Plaintiff repeats, realleges, and incorporates by reference the foregoing

14    paragraphs.

15    44.   Defendant's violations of the FDCPA include, but are not necessarily

16    limited to, 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692f, 1692f(1),

17    1692f(2), and 1692f(4).

18    45.   As a direct result and proximate cause of Defendant's actions in violation

19    of the FDCPA, Plaintiff has suffered actual damages.

## VI.  DEMAND FOR JURY TRIAL

21    Plaintiff hereby demands a jury trial on all issues so triable.

## VII.  PRAYER FOR RELIEF

23    WHEREFORE, Plaintiff requests that judgment be entered against

24    Defendant for:

25    a)    Actual damages under the FDCPA;

1    b)    Statutory damages under the FDCPA;

2    c)    Costs and reasonable attorney's fees pursuant to the FDCPA; and

3    d)    Such other relief as may be just and proper.

4

5    DATED   July 11, 2013  .

6

7                                          s/ Floyd W. Bybee
                                     Floyd W. Bybee, #012651
8                                    **BYBEE LAW CENTER, PLC**
                                     90 S. Kyrene Rd., Ste. 5
9                                    Chandler, AZ 85226-4687
                                     Office: (480) 756-8822
10                                   Fax: (480) 302-4186
                                     floyd@bybeelaw.com
11
                                     Attorney for Plaintiff
12

13

14

15

16

17

18

19

20

21

22

23

24

25